## 8158. BLOODWORTH et al. v. WOODWARD.

The plea of failure of consideration was supported by evidence, from which it appeared that the consideration of the note sued on was a certain number of shares of stock, never delivered, and that the contract between the original parties to the note was rescinded; and the evidence authorized a finding that the plaintiff (to whom the note had been transferred under an agreement that when paid he was to furnish that amount of stock to the party from whom he obtained the note) was not a bona fide holder without notice. Under the evidence the court erred in directing a verdict for the plaintiff.

Decided July 23, 1917.

Complaint; from Baldwin superior court—Judge Park. May 1, 1916.

Sibley & Sibley, Livingston Kenan, for plaintiffs in error.

Allen & Pottle, contra.

JENKINS, J. It appears, from the evidence, that the note sued on was given by Bloodworth to Lawrence for the purchase of certain stock in a corporation whose stock Lawrence was then engaged in selling. Lawrence assigned the note to Stewart, who was also engaged in selling stock of the corporation. Stewart indorsed and delivered over the note to Woodward, the plaintiff in

this suit, who was an officer of the corporation and owner of such an amount of its stock as was contemplated by the purchase. Woodward, upon the transfer of the note to him, indorsed the stock to Stewart, who immediately and as a part of the same transaction reassigned it to Woodward, under the following written understanding: "I am handing you herewith certificate number 253 for 150 shares of the capital stock of the Universal Ice Co., and indorsed in blank by me. It is understood that you are to hold this certificate as security, against the notes of J. O. Bloodworth, and, in the event Mr. Bloodworth does not pay the notes, you are to keep this certificate and turn the notes over to me; or, if you so elect, you may have the privilege of forcing collection of the notes; in which event you will turn the certificate back to me." In defense to the suit by Woodward, Bloodworth, as principal, and Lawrence, as indorser, admitted the execution of the note, and pleaded failure of consideration, in that the stock had never been delivered, and also that the contract of purchase between Bloodworth and Lawrence had been rescinded. It was further pleaded that Woodward was not a bona fide holder of the note; that Lawrence was simply a bailee of the note with authority to hold it until delivery of the stock, and that Stewart and Woodward had knowledge of this fact. There was evidence going to show the subsequent rescission between Bloodworth and Lawrence, and also that the stock had not been delivered to Bloodworth. The trial judge, treating Woodward as a bona fide holder of the note, directed a verdict for the plaintiff, in the amount of the principal, interest, and attorney's fees sued for.

It is contended by the defendants that the plaintiff should not be treated as a bona fide purchaser of the note, for the following reasons: (1) Because he had actual notice of the fact that the stock had not been delivered to Bloodworth. Stewart, testifying for the defendants, said: "Mr. Woodward transferred to me this stock, and I transferred it back to him, and he was to keep it with the understanding that when these notes were paid he was to deliver this stock to me to be delivered to Bloodworth;" also: "Mr. Woodward then had notice, at the time this letter was written, and there was to be no sale of the stock by him and no absolute liability on his part unless Bloodworth paid these notes. He was going to sell the stock, and was to part with it when the notes were paid. Then, at the time I turned it over to him, he knew it was for stock that

had not been paid for and had not been delivered to Bloodworth."
(2) Because the evidence shows that the plaintiff paid no value
for the note so assigned to him. The evidence of Stewart along this
line was as follows: "I did not consider that Woodward got the
title to these notes. I indorsed them to him and delivered them to
him. The agreement was that he should take these notes, and, if
they were paid, then he was to deliver this 150 shares of stock;
and if the notes were not paid, then he was not to deliver the
stock." This witness further testified as follows: "He [Wood-
ward] was going to sell the stock and was to part with it when the
notes were paid. Then, at the time I turned it over to him, he
knew it was for stock that had not been paid for and had not been
delivered to Bloodworth. I never heard of him delivering the stock
to Bloodworth, he never did it through me." (3) Because, under
the terms of the written agreement already quoted, whereby the
note was assigned to Woodward and the stock reassigned to him, the
purchase of the note was not fully consummated until after the
note became due, and therefore the purchaser of the note occu-
pied the same position, relatively to the rights of Bloodworth, that
he would have occupied had the note been delivered after its ma-
turity. (4) Because the circumstances under which the purchase
of the note was made by Woodward were sufficient to put a rea-
sonable man on inquiry as to the probable defenses thereto; and
the defendants contend that this was a question which should have
been determined by the jury.

On the other hand, the plaintiff contends that at the time of
his purchase of the note there was nothing to disclose or suggest
to him any defense thereto, and that under the terms of the trans-
fer he became charged with the absolute legal obligation to deliver
the stock to Stewart on payment of the note, and that until then
he held the stock merely as security for its payment, and that, since
the stock at that time had a value, he would, in consequence of
such obligation, properly occupy the position of a bona fide pur-
chaser of the note. He contends that there was an actual sale and
delivery of the stock by himself to Bloodworth, through Stewart,
and that his subsequent holding of the same as security only could
not affect his position as a bona fide purchaser of the note.

It is manifest, from the portions of the evidence we have quoted,
that the plaintiff was necessarily aware, when he took the note,

that the consideration therefor was the purchase by Bloodworth of the corporate stock mentioned, that this stock had not in fact been delivered, and that his own stock in the corporation was intended, under his agreement with Stewart, to supply the sole consideration of the note. While the defendants, in their pleas, clearly imply that the intention of the original agreement was the purchase of new or treasury stock (since it is denied that the same had ever been "issued" or delivered in accordance with the contract of purchase), still it does not appear that the defendants offered to show by the testimony that such was the case and that the holder had such knowledge. If such had been done, we can see how no compliance with the contract could be claimed upon the ground that a transferee of the note offered stock which had already been issued and taken, since it is presumably possible that Bloodworth might have desired to subscribe because of the very fact that Woodward was a stockholder; and furthermore, the issuance and sale of additional stock by the corporation might, in his estimation, have enhanced the value of the whole, and this might have entered into his willingness to buy. Therefore, the question, as we see it, resolves itself into the question whether or not the delivery of such stock by Woodward to the first transferee of the note, Stewart, is equivalent to a delivery or offer of delivery to Bloodworth. The defendants, in their pleas, deny knowledge of the fact that Woodward had obtained possession of the note prior to suit thereon, and therefore claim ignorance of such transfer of the stock by Stewart. There appears, however, no testimony in the record substantiating this claim. It does appear, however, that Woodward knew from the beginning that the delivery of his stock was to constitute the sole consideration of the note, and it is not disputed that a subsequent rescission of the contract of purchase and sale was had between Bloodworth and Lawrence, the original contracting parties. After it was clearly made to appear that, so far as the original contracting parties were concerned, there was a rescission, and that when the transfer of the note was taken by Woodward he knew that his own stock was to supply the sole consideration of the note, was it not incumbent on him to show at the trial that the defendants knew that he stood ready to supply the consideration which constituted the only basis of the note?

It is a well-settled principle of law that knowledge on the part

of a bona fide holder of a negotiable note that it was given in consideration of an executory contract or agreement of the payee, even though the consideration may be expressed in the instrument itself, will not deprive the indorsee of the character of a bona fide holder, unless he had additional notice of the breach of such agreement by the payee; and it has been often held that such a transferee is not bound to make inquiry as to whether or not there has been such a failure. *Bank of Commerce* v. *Barrett,* 38 *Ga.* 126 (95 Am. D. 384) ; *Post* v. *Abbeville & Waycross Railroad Co.,* 99 *Ga.* 232 (25 S. E. 405) ; *Citizens Bank of Vidalia* v. *Greene,* 12 *Ga. App.* 49 (76 S. E. 795) ; *Simmons* v. *Council,* 5 *Ga. App.* 386 (63 S. E. 238) ; *Brooks* v. *Floyd,* 12 *Ga. App.* 530 (77 S. E. 877) ; *Fryer* v. *State,* 12 *Ga. App.* 533 (77 S. E. 830) ; *McMillan* v. *First National Bank,* 13 *Ga. App.* 23 (78 S. E. 734) ; *Hudson* v. *Best,* 104 *Ga.* 131 (30 S. E. 688) ; 3 R. C. L. 1067, § 273. Still, in the present case, irrespective of the subsequent rescission between Bloodworth and Lawrence, Woodward not only knew that the consideration of the note was the purchase of the corporate stock, which had not been delivered, but he had further notice that Lawrence would not complete the terms of the sale by supplying the consideration thereof. It is also true that if there had been no rescission between the original parties, and if this were a contest between Bloodworth and Lawrence themselves, if the agreement between them was silent as to when the certificates were to be delivered, the law would presume that this would be done on payment of the note; and it would be no defense to such a suit that no tender of the stock was made prior to the maturity of the note. *Moore* v. *Garland,* 78 *Ga.* 764 (3 S. E. 654) ; *Prontaut* v. *Lorick,* 17 *Ga. App.* 495 (87 S. E. 716). However, under the record in this case, we must assume that Bloodworth, subsequent to the rescission, considered that he was no longer liable on the note; and it appears that Woodward waited more than four months after its maturity before bringing suit thereon. The first disclosure of any claim of liability on the note appears to be the notice of liability for attorney's fees, served on defendants by attorneys for the Woodward Lumber Company nearly four months subsequent to its maturity. If Woodward, as the ultimate transferee and owner of the note, had the right to substitute himself as the proper person to supply the consideration of the note, which he knew had otherwise failed, it would seem that

it was at least incumbent upon him to show that he had supplied, or stood ready, able, and willing to supply, the consideration called for, and within the time embraced by the contract of purchase. The fact that the stock might become worthless or deteriorate in value, as in fact appears to have happened in this case, is sufficient reason why the purchaser of the note, with the notice herein set forth, should have complied with this obligation on his part within the period contemplated by the terms of the sale. The fact that Woodward, without the knowledge of Bloodworth, may have unconditionally obligated himself to Stewart, who was himself only a transferee, to deliver the stock to the latter on payment of the note by Bloodworth would not constitute delivery to Bloodworth or charge him with notice of Woodward's readiness so to do. For these reasons, we think it was error to direct a verdict in favor of the plaintiff.

*Judgment reversed. Broyles, P. J., concurs. Bloodworth, J., disqualified.*